IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, NATIVE ECOSYSTEMS COUNCIL, | CV 12–150–M–DLC |
| Plaintiffs, | ORDER |
| vs. | |
| FAYE KRUGER, Regional Forester of Region One of the U.S. Forest Service, UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture, and U.S. FISH AND WILDLIFE SERVICE, an agency of the U.S. Department of Interior, | **FILED** AUG 0 6 2014 Clerk, U.S District Court District Of Montana Missoula |
| Defendants. | |

Plaintiffs filed suit against the Federal Defendants alleging that the Cabin

Gulch Project ("Project") on the Helena Natural Forest violated the Endangered

Species Act ("ESA") with respect to grizzly bears and lynx, and the National

Forest Management Act ("NFMA") and National Environmental Policy Act

("NEPA") in various ways. On June 24, 2013, the Court issued an order resolving

the parties' motions for summary judgment, ruling in favor of the Plaintiffs on

their ESA lynx claim, and in favor of the Defendants on all other claims, including

those pertaining to grizzly bears and elk. (Doc. 26.) The Court enjoined the Project

1

and remanded the matter to the Defendants to address the deficiencies identified in its order. On April 23, 2014, the Court dissolved the injunction after finding that the Defendants had cured the Project's deficiencies. The following day, Plaintiffs appealed both the dissolution order and the Court's adverse rulings on summary judgment. Ground-disturbing activities on the Project began on May 30, 2014.

Presently before the Court is Plaintiffs' motion for an injunction pending appeal, filed on June 17, 2014. Plaintiffs focus on their elk and grizzly bear claims, characterizing this as an ESA case while making no mention of their NEPA or NFMA claims. For the reasons articulated herein, Plaintiffs' motion will be denied.

## I. Standard of Review for Injunctions Based on ESA Claims

District courts are empowered to "suspend, modify, restore, or grant an injunction . . . [w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction." Fed. R. Civ. P. 62(c). Courts evaluate motions for preliminary injunction and motions for injunction pending appeal using the same standard. *Se. Alaska Conservation Council v. U.S. Army Corps of Engineers*, 472 F.3d 1097, 1100 (9th Cir. 2006). In the landmark case of *Winter v. Natural Resources Defense Council*, the Supreme Court clarified that in order to obtain an injunction, a plaintiff must establish that (1) it is likely to

succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of injunctive relief, (3) the balance of the equities tips in its favor, and (4) an injunction is in the public interest. 555 U.S. 7, 20 (2008).

Given the vast swaths of public land within this District and the diversity and iconic nature of the wildlife that inhabits those lands, this Court is frequently presented with injunction requests based on ESA claims. Through the briefing on this motion, as well as in other recent cases, the Court has become aware of some confusion as to the appropriate standard for injunctive relief for such claims – specifically, whether or not *Winter* applies.[1] Much of this confusion stems from a series of pre-*Winter* cases holding that the "traditional approach" to injunctive relief does not apply to ESA claims, and setting a lower bar for ESA injunctions. This Court's ruling in *Alliance for the Wild Rockies v. Krueger*, 950 F.Supp.2d 1196 (D. Mont. 2013) (hereinafter "*Bozeman*"), appears to have further muddied

---

[1] For example, the Defendants in this case state "[a] recent order by this Court suggests that the *Winter* test does not apply to preliminary injunctions based on ESA claims. *Alliance for the Wild Rockies v. Krueger*, 950 F.Supp.2d 1196, 1200-04 (D. Mont. 2013) ("*Bozeman*")." (Doc. 72 at 13, fn. 3.) While Defendants assert that *Winter* is the appropriate standard, they also attempt to remove the lesser "serious questions" test from the equation here, arguing that "the 'serious questions' test is proper *only* when used within the *Winter* framework." (*Id.* at 12, fn. 2 (emphasis in original).) In a different case, several Federal defendants recently claimed that the *Bozeman* burden-shifting approach was inconsistent with *Winter*, and implied that *Bozeman* established a different standard, requesting that "the *Winter* standard govern[] the Plaintiffs' motion." *Cottonwood Environmental Law Center v. U.S. Sheep Experiment Station*, CV 14-192-DLC, Doc. 8 at 10-11 (D. Mont. July 8, 2014).

the waters.[2]

Before *Winter*, a party was entitled to an injunction after clearly

demonstrating "(1) a likelihood of success on the merits and the possibility of

irreparable injury or (2) sufficiently serious questions going to the

merits to make them a fair ground for litigation and a balance of the hardships

tipping decidedly in favor of the party seeking relief" (hereinafter referred to as

the "traditional standard"). *Sierra Club v. Marsh*, 816 F.2d 1376, 1382 (9th Cir.

1987). These were not "two independent tests but simply the extremes of the

continuum of equitable discretion." *Id.* at 1383-84. Thus, courts' authority to issue

---

2       In *Bozeman*, the Court addressed the proper standard for evaluating the likelihood
of irreparable harm, establishing what has become known as the *Bozeman* burden-shifting
framework. By way of introduction to the overarching issue of injunctions regarding ESA claims,
the Court wrote:

> As the Court explained in *Salix*, the traditional preliminary injunction
> analysis set out in *Winter v. Natural Resources Defense Council*, 555
> U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008), does not apply to
> alleged ESA violations. *Salix*, 944 F.Supp.2d at 1001, 2013 WL
> 2099811 at *16 (citing *Natl. Wildlife Fedn. v. Natl. Marine Fisheries
> Serv.*, 422 F.3d 782, 793 (9th Cir.2005)). In ESA cases, courts do not
> have equitable discretion to balance the parties' competing interests.
> *Natl. Wildlife Fedn. v. Burlington N. R.R.*, 23 F.3d 1508, 1510 (9th
> Cir.1994). The equitable scales are always tipped in favor of the
> endangered or threatened species. *Id.; see also TVA v. Hill*, 437 U.S.
> 153, 194, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978); *Natl. Marine
> Fisheries Serv.*, 422 F.3d at 794.

950 F. Supp. 2d at 1200.

4

injunctions stemmed from its equitable powers.

In the seminal case of *Tennessee Valley Authority v. Hill*, the Supreme Court addressed preliminary injunctions in the context of ESA claims, conducting a thorough review of the Act and its legislative history and concluding "beyond a doubt that Congress intended endangered species to be afforded the highest of priorities." 437 U.S. 153, 174 (1978). The Court held that because the ESA was a manifestation of Congress's view that the value of endangered species was "incalculable," courts' equitable powers may not be used to balance the loss of a sum certain against such an incalculable value. *Id.* at 187-88. Citing its own lack of "a mandate from the people to strike the balance of equities" on the side of the Federal defendants, the Court concluded that "Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities . . . ." *Id.* at 194.

In a series of opinions issued in the wake of *Hill*, the Ninth Circuit held that the traditional standard was not the proper test for ESA injunctions because "the Supreme Court held that Congress had explicitly foreclosed the exercise of traditional equitable discretion by courts faced with [ESA violations]." *Marsh*, 816 F.2d at 1383. In *Marsh*, the Court stated that "the balance of hardships and the public interest tip heavily in favor of endangered species" and that courts "may not

use equity's scales to strike a different balance." *Id.*; *see also Friends of the Earth v. U.S. Navy*, 841 F.2d 927, 933 (9th Cir. 1988) (citing *Hill* and *Marsh* for the propositions that the balance of hardships and the public interest tip heavily in favor of endangered species, and that Congress removed from the courts their traditional equitable discretion in injunction proceedings); *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 793-94 (9th Cir. 2005) (same).

In *National Wildlife Federation v. Burlington Northern Railroad*, the Ninth Circuit reaffirmed its position in *Marsh* and *Friends of the Earth*, adding: "Nevertheless, these cases do not stand for the proposition that courts no longer must look at the likelihood of future harm before deciding whether to grant an injunction under the ESA. Federal courts are not obligated to grant an injunction for every violation of the law. The plaintiff must make a showing that a violation of the ESA is at least likely in the future." 23 F.3d 1508, 1511 (9th Cir. 1994). Thus, the Court recognized that *Hill* did not strip courts of all discretion to grant preliminary injunctions in ESA cases, and that the likelihood of future harm remained a key factor that must be considered.

In 2008, *Winter* modified and formalized the Ninth Circuit's traditional approach, requiring a plaintiff to establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." 555 U.S. at 20. *Winter* pertained to the general standard for injunctions and did not address the lower standard traditionally applied to ESA claims. However, *Winter* contains broad language, and does not in any way suggest that its standard is inapplicable in the ESA context. *Id.* (stating that "[a] plaintiff seeking a preliminary injunction must establish . . . "); *id.* at 24 (characterizing injunctive relief as "an extraordinary remedy *never* awarded as a matter of right") (emphasis added). More significantly, as several cases resolved by this Court and others demonstrate, *Winter* can be harmonized with *Hill* and its Ninth Circuit progeny.

The "traditional analysis" rejected by this Court in *Bozeman* does not refer to the overall *Winter* analysis, but to what became the third and fourth prongs of that analysis: the balance of the equities and the public interest. *See Burlington N.*, 23 F.3d at 1510-11 (stating that in claims involving the ESA, "Congress removed from the courts their traditional equitable discretion in injunction proceedings of balancing the parties' competing interests" and "the balance of hardships and the public interest tips heavily in favor of protected species"). Neither *Hill* nor any subsequent case proscribes consideration of the likelihood of success on the merits or likelihood of irreparable harm in ESA cases. To the contrary, the jurisprudence

in this area requires a court to consider these factors before it may issue an injunction. *See Conservation Cong. v. U.S. Forest Serv.*, 720 F.3d 1048, 1054 (9th Cir. 2013) (applying the *Winter* analysis to a motion for injunction in a case alleging ESA violations, and affirming the district court's denial of an injunction based on plaintiff's failure to establish a probability of success on the merits of its ESA claim). United States District Judge Donald Molloy accurately and succinctly summarized the current paradigm in *Defenders of Wildlife v. Salazar*, stating:

> While *Hill* does hold that courts shall defer to Congress when it has decided priorities in a given area, and that Congress has done so with the ESA, this is not the promulgation of a unique preliminary injunction standard. Instead, *Hill* affects how the Court balances the equities in the third and fourth part of the preliminary injunction standard laid out in *Winter*, but it does not command a separate ESA standard when measured by the Court's ruling in *Winter*.

812 F.Supp.2d 1205, 1207 (D. Mont. 2009).

The Court clarifies that the *Winter* analysis – as modified by the principles articulated in *Hill* – applies to motions for injunctive relief based on alleged ESA violations. Any contrary interpretation of the Court's holding in *Bozeman* is erroneous. The Court will now summarize the modified *Winter* analysis.

In order to secure an injunction, a plaintiff must satisfy all four *Winter* prongs. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir.

2011). A plaintiff must show that absent an injunction, irreparable harm is not only possible, but likely. *Winter*, 555 U.S. at 22. In *Bozeman*, this Court developed what has become known as the *Bozeman* burden-shifting framework as a practical means to guide its analysis of irreparable harm in light of two divergent lines of Ninth Circuit cases articulating the plaintiff's burden in ESA cases. First, "a plaintiff must substantiate its claim by alleging a specific irreparable harm resulting from the ESA violation" so that the court may "tailor an injunction to remedy that harm." *Bozeman*, 950 F.Supp.2d at 1202. At the outset, "the plaintiff must allege that, as a result of the ESA violation, a project will jeopardize the continued existence of a specific endangered or threatened species or will destroy or adversely modify its critical habitat." *Id.* (relying on *Burlington N.*, 23 F.3d at 1511). If the plaintiff satisfactorily alleges specific harm, the court presumes the harm to be irreparable and the burden shifts to the agency, "which must show that the action will not jeopardize the species or destroy or adversely modify its critical habitat." *Id.* (citing *Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1035 (9th Cir. 2005)). If the agency presents sufficient evidence, the plaintiff must produce its own evidence of irreparable harm in order for an injunction to issue. *Id.* at 1203 (relying on *Burlington Northern* and *National Marine Fisheries Service*).

As to likelihood of success on the merits, the long-entrenched but lesser "serious questions" standard remains viable after *Winter*. *Cottrell*, 632 F.3d at 1134-35. In *Cottrell*, the Court held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met ." *Id.* at 1132. *Cottrell* clarifies that district courts retain discretion to employ a sliding scale, and that plaintiffs are entitled to judicial application of the lesser "serious questions" test upon satisfactory showing on the other three *Winter* prongs. *Id.* at 1135 ("Because it did not employ the 'serious questions' test, the district court made an error of law in denying the preliminary injunction sought by AWR. We conclude that AWR has shown that there is a likelihood of irreparable harm; that there are at least serious questions on the merits . . .; that the balance of hardships tips sharply in its favor; and that the public interest favors a preliminary injunction").

As discussed at length above, in ESA claims, the balance of the hardships always tips sharply in favor of the endangered or threatened species. *Wash. Toxics*, 413 F.3d at 1035; *see also Marbled Murrelet v. Babbitt*, 83 F.3d 1068, 1073 (9th Cir. 1996) ("Congress has determined that under the ESA the balance of hardships always tips sharply in favor of endangered or threatened species"). Courts and

litigants often conflate the interests of the plaintiff and the interests of the endangered or threatened species, thus invariably placing Congress's thumb on the plaintiff's side of the scale. Undoubtedly, in many cases the plaintiff's and species' interests align, such that tipping the balance in favor of the species has the effect of tipping the balance in favor of the plaintiff. However, such a result is not always justified.[3] The law is clear that threatened and endangered species are the beneficiaries of *Hall*, rather than plaintiffs professing to act on their behalf. It follows that a plaintiff cannot merely state that the balance of the hardships and the public interest falls in its favor. Instead, as with irreparable harm, a plaintiff

---

[3] This position is consistent with several orders recently issued by judges in this District. *See Swan View Coal. v. Weber*, 2014 WL 3510166, *2 (D. Mont. July 14, 2014) (after stating that "Defendants have presented evidence that enjoining the Project would actually result in greater harm to the environment and protected species," and describing that evidence and Defendants arguments, the Court held that "the consideration of the balance of the equities and the public interest tip in favor of the Forest Service"); *Friends of the Wild Swan v. U.S. Forest Serv.*, CV 11-125-M-DWM, Doc. 89 at 4 (D. Mont. June 20, 2014) (stating that in light of the fact that "evidence here suggests that irreparable harm may be more likely if the Colt Summit Project is stayed as it is a restoration project that is designed to arrest ongoing environmental harms," "enjoining the project would not be in the public interest of halting the trend towards species extinction and environmental degradation," and concluding that "Plaintiffs have also failed to demonstrate that the balance of the equities weigh in their favor. The Forest Service found the project not only results in greater protections for the environment, but also has economic benefits and is expected to decrease the risk of catastrophic fire. . . . [T]he balance of equities and the consideration of the public interest tips in favor of the Forest Service"); *Alliance for the Wild Rockies v. Bradford*, 979 F.Supp.2d 1139, 1142 (D. Mont. 2013) ("Contrary to Plaintiff's assertion . . . inaction, will, over time, likely result in more dire consequences for the grizzly bear than implementation of the project. Plaintiff has not met their burden to show a likelihood of irreparable injury. Given the public interest in halting the trend toward species extinction, failure to take action to improve habitat conditions for the Cabinet-Yaak grizzly bear is contrary to the public interest as well" (internal citations omitted)).

must present the court with some basis on which it can conclude that an injunction would in fact benefit the protected species.

As discussed at greater length below, this case presents a situation where the species in question would perhaps best be served by the absence of an injunction, thus tipping the balance of the equities and public interest prongs in the Defendants' favor. When a defendant produces evidence that denial of an injunction is in the best interest of the species, *Hill* demands that courts closely evaluate those claims and tip the balance in favor of whatever action is in the best interest of the species, regardless of which party supports that action. In keeping with *Cottrell*'s sliding scale approach, if the plaintiff has made a weak showing on the other *Winter* prongs and the defendant presents substantial evidence that its position is in fact consistent with the species' best interests, the court should deny the injunction. On the other hand, if the plaintiff has made a strong showing on the other prongs, the court should approach defendant's arguments with caution, especially if plaintiff advances a viable argument on the same point. Clearly, there will be considerable overlap between this inquiry and the sufficiency of a plaintiff's allegations of irreparable harm.

Finally, consideration of the public interest is generally subsumed by the balance of the equities analysis when the Federal government is a party. *Drakes*

*Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (when the government is a party, the factors of public interest and balance of the equities merge). In the context of ESA claims, the public interest also tips in favor of the species. *Friends of the Earth*, 841 F.2d at 933 ("the balance of hardships and the public interest tip heavily in favor of the endangered species"). Thus, analysis on this prong is appropriately tied to the balancing of the equities, and will tip in favor of the same party.

## II. Standard of Review for Injunction as to Plaintiffs' Non-ESA Claims

Plaintiffs attempt to bootstrap the modified *Winter* standard for ESA injunctions onto their entire case, which they characterize as an "ESA case" (Doc. 71 at 3). Specifically, Plaintiffs seek an injunction based on their elk and grizzly bear claims, analyzing both under the modified *Winter* standard, even though elk is not an ESA-listed species, and as such, was properly not included in the ESA claim.

Injunctions are extraordinary remedies, never awarded as of right. *Winter*, 555 U.S. at 22. Accordingly, the modified *Winter* analysis may be applied exclusively to ESA claims; it cannot be stretched to cover all claims pled in a case that contains an ESA claim. In such situations, plaintiff must seek an injunction related to any non-ESA claims under the complete and more exacting *Winter* test.

*See Native Ecosystems Council v. Krueger*, CV 13-167-DLC, Doc. 41 at 5-6, 2014 WL 3615775, *2 (D. Mont. July 21, 2014) (denying injunctions, stating "Plaintiffs fail to address the balance of the harms or the public interest with respect to their NEPA or APA claims. Plaintiffs appear to argue that the scales tip in their favor simply because they have alleged an ESA claim"); *see also Friends of the Wild Swan v. Christensen*, 955 F.Supp.2d 1197 (D. Mont. 2013) (applying the "more liberal standard" to ESA claims, and the complete *Winter* standard to NEPA and NFMA claims).

## III. Analysis

### A. Injunction Based on Grizzly Bear ESA Claims

Plaintiffs' allegation as to irreparable harm reads in its entirety:

> As the Ninth Circuit has stated, "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." *Sierra Club v. Bosworth*, 510 F.3d 1016, 1033 (9th Cir. 2007) (internal quotations and citations omitted). In this case, Plaintiffs' members use the Project area for vocational and recreational purposes. Garrity Declaration ¶¶ 2-9. Plaintiffs assert that the challenged activities will irreparably harm their members' interests in the naturally functioning ecosystems of the area, in particular their interests in attempted viewing, studying, and enjoying grizzly bears and elk undisturbed in their natural surroundings. Garrity Declaration ¶¶ 2-9. The challenged activities will prevent Plaintiffs' members' use and enjoyment of the Project area in its undisturbed state

> for this purpose. Garrity Declaration ¶¶ 2-9. This type of
> harm to Plaintiffs' members' interests satisfies the
> irreparable harm prong of the preliminary injunction test.
> *Cottrell*, 632 F.3d at 1135.

(Doc. 71 at 7-8.) At the outset, the Court notes that this assertion is identical[4] to an

assertion made by these same Plaintiffs in support of a motion for stay pending

appeal recently filed in another case before this Court. *Krueger*, CV 13-167-DLC,

Doc. 39 at 7-8 (D. Mont. July 1, 2014). In *Krueger*, the Court determined that

Plaintiffs failed to demonstrate a likelihood of irreparable injury absent an

injunction, and it reaches the same conclusion here. 2014 WL 3615775, *2.

*Bozeman* sets a relatively low bar for a plaintiff's initial showing on

irreparable harm, but it requires more than general allegations related to human

enjoyment of a rich ecosystem. *See Swan View Coalition v. Weber*, 2014 WL

3510166, *2 (D. Mont. 2014) ("Plaintiffs allege only that their members' interests

in the naturally functioning ecosystems of the area and their and enjoyment of the

environment have been harmed . . . [s]uch allegations provide an insufficient bases

for this Court to order injunctive relief"); *Krueger*, 2014 WL 3615775, *2.

(holding that Plaintiffs fail to demonstrate likelihood of irreparable harm because

---

[4]     The two statements differ only in that they are supported by and cite different
declarations, and the use of the word "Plaintiffs" to begin the third sentence in the statement in
this case, as opposed to the word "Counsel" used in *Krueger*.

they "do not contend that the Project will irreparably harm any endangered or threatened species. Plaintiff contend instead that 'their interests in attempted viewing, studying, and enjoying grizzly bears and elk undisturbed in their natural surroundings' will be irreparably harmed by the Project's activities. Plaintiffs offer no evidence that the Project is likely to disturb grizzly bears . . . [or] harm lynx").

While injury to the plaintiff is a critical element of standing, *Friends of the Earth v. Laidlaw Envntl.Services*, 528 U.S. 167, 181 (2000), which is not disputed here, it is not sufficient to satisfy the element of irreparable harm in the context of ESA-based injunctions. *See Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1171 n. 6 (9th Cir. 2011) ("Of course . . . a plaintiff may establish standing to seek injunctive relief yet fail to show the likelihood of irreparable harm necessary to obtain it"). Any alleged harm to the plaintiff must be anchored in a specific and detailed allegation of harm to a particular species or critical habitat. *See Sierra Forest Legacy v. Sherman*, 951 F.Supp.2d 1100, 1111 (E.D. Cal. 2013) (holding that "To show such an [irreparable] injury, a plaintiff must identify specifically planned tree-cutting, link the proposed tree-cutting to its members' specific interests, and demonstrate that the proposed tree-cutting will harm their interests"). On a practical level, specificity is required so that the Court may craft its injunction to remedy the harm. *Bozeman*, 950 F.Supp.2d at 1202.

16

Plaintiffs do not sufficiently identify any specific activity that will harm grizzlies, nor any specific way in which the Project will affect their interest in observing those animals. Thus, Plaintiffs fail to allege specific irreparable harm to a listed species or critical habitat. *See id.* (requiring allegations of "specific irreparable harm" to species or critical habitat); *Burlington Northern*, 23 F.3d at 1511 (implying that the harm in the ESA context constitutes jeopardy to "the continued existence of any endangered species or threatened species or result in the destruction or modification" of critical habitat).

Finally, the Court notes that the Plaintiffs' emaciated stock paragraph on irreparable harm may be the result of excessive confidence placed in *Cottrell*, in which AWR, one of the Plaintiffs in the instant case, succeeded on the irreparable harm prong based on the impact of a project on its members' ability to view, experience, and utilize the project area. 632 F.3d at 1135. However, *Cottrell* is distinguishable in both the substance and sufficiency of AWR's showing on irreparable harm. As to substance, AWR did not advance any ESA claims in *Cottrell*. As described herein, Plaintiffs must specifically allege harm to a threatened or endangered species or its critical habitat to obtain an ESA-based injunction, which is not required for injunctions based on the environmental statutes at issue in *Cottrell*. As to sufficiency, although the Ninth Circuit's analysis

of AWR's assertions on the likelihood of irreparable harm is succinct, AWR's briefing on the issue was far more specific, thoroughly-developed, and well-supported than its stock paragraph. *See* Plaintiffs'-Appellants' Opening Appellate Brief at VII(A)(1) *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. Sept. 14, 2009) (No. 09-35756), 2009 WL 4832092. Plaintiffs cannot merely utter the same general harm under which they succeeded in *Cottrell* as an incantation and expect the same outcome. Plaintiffs must be specific, adequately explain their assertion, and in ESA claims, sufficiently allege harm to a species or habitat.

Because the Plaintiffs have failed to demonstrate the likelihood of irreparable harm absent an injunction, the Court need not proceed further in the modified *Winter* analysis. *Cottrell*, 632 F.3d at 1135 (stating that *Winter* requires plaintiffs to make a showing on all four prongs). However, for the sake of thoroughness and in order to present a complete analysis under the modified *Winter* standard, the Court will continue.

Plaintiffs argue that they have presented a serious question as to whether grizzlies "may be present" in the project area, thus requiring their inclusion in the Project's Biological Assessment. This is merely a restatement of Plaintiffs' summary judgment argument, which the Court rejected (Doc. 26 at 11-16), and is

insufficient to raise serious questions regarding the merits of their claim. *See Friends of the Wild Swan,* CV 11-125-M-DWM, Doc. 89, at 3. Once again, injunctions are extraordinary remedies. This maxim carries particular significance when a plaintiff seeks an injunction pending appeal following the court's resolution of the case and its dissolution of a preliminary injunction, as is the case here. The very existence of Federal Rule 62(c), to which courts have consistently applied the same standard as preliminary injunctions – including the need to show "serious questions" or likelihood of success on the merits – indicates that a middle ground exists in instances where a district court rules in favor of the defendants, yet acknowledges the fact that its ruling was a close call, or that the law upon which its ruling rests is unsettled or opaque. It is in those instances where an injunction pending appeal is appropriate; if the Court adopted a broader application of Rule 62(c), the exception would swallow the rule and injunctions would be issued as a matter of course. Here, Plaintiffs fail to articulate serious questions going to the merits, which is fatal to their motion.

Finally, the Court turns to the balance of the equities and public interest prongs, which tip heavily in favor of the endangered species. *Friends of the Earth*, 841 F.2d at 933. Plaintiffs simply conflate the species' best interests with their own position regarding the need for an injunction pending appeal without

presenting any argument or evidence as to why their interests align. As discussed above, the Court may not merely assume that the Plaintiffs are acting in the species' best interest, especially when confronted with the type of comprehensive contradictory evidence that the Defendants have presented here. (Docs. 72-2 through 72-8.) Defendants assert that an injunction would delay various Project components designed to enhance the environment. (Doc. 72 at 23-25; *see generally* Docs. 72-2 through 72-8.) For example, one of the main effects of the Project is to reduce the risk of catastrophic wildfires, which can be devastating to the environment. (*Id.*) Additionally, the Project will likely restore grasslands and shrublands, stimulate growth of wildlife forage, decommission roads, increase wildlife security habitat, improve soil and water quality, and reduce sediment delivery to streams. (*Id.*) While there is no indication that grizzlies regularly inhabit the Project area, should they ever expand their range into the area, these environmental enhancements will almost certainly benefit them.

Plaintiffs have failed to show that an injunction is in the grizzlies' best interest, and are therefore not entitled to *Hill*'s tip in their favor on the balance of the equities and the public interest.

## B.     Elk Claims

Plaintiffs improperly apply the modified *Winter* standard to their elk claims pled under NEPA and NFMA. Regardless of which standard the Court applies, Plaintiffs claims fail. Plaintiffs did not meet their initial burden to allege likelihood of irreparable harm under *Bozeman*, much less under the more demanding general *Winter* standard. Plaintiffs merely rehash their summary judgment arguments, and fail to demonstrate either likelihood of success on the merits or serious questions on the merits. Finally, Plaintiffs make no argument as to balance of the equities or the public interest, which is particularly detrimental to their success on non-ESA claims, since there is no automatic "tip" available in favor of the environment or non-endangered or threatened species.

## IV.     Conclusion

Plaintiffs have failed to sufficiently allege irreparable harm, to demonstrate serious questions on the merits, and to show that an injunction is consistent with the species' best interests, which must be the Court's dominant concern when evaluating the balance of the equities and the public interest for injunctions based on ESA claims. Accordingly,

IT IS ORDERED that the Plaintiffs' motion for injunction pending appeal (Doc. 70) is DENIED.

Dated this 6th day of August, 2014.

Dana L. Christensen, Chief Judge
United States District Court